**UNITED STATES of America, Plaintiff,**

**v.**

**James S. DUARDI et al., Defendants.**

**No. 23939–1.**

United States District Court, W. D. Missouri, W. D.

Jan. 2, 1973.

---

Bert C. Hurn, U. S. Atty., Gary Cornwell, Strike Force, Kansas City, Mo., for plaintiff.

Michael J. Drape, Kansas City, Mo., for Duardi.

Lawrence F. Gepford, Kansas City, Mo., for Brancato.

David R. Freeman, Federal Public Defender, Kansas City, Mo., for Bishop.

Patrick A. Williams, Tulsa, Okl., for King.

Roehm A. West, Tulsa, Okl., for Husong.

Stephen Jones, Oklahoma City, Okl., for Grayson.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

This case pends on the defendants' timely filed joint motion for acquittal, to set aside the verdict, and, in the alternative, for a new trial. We shall rule that motion and direct further proceedings in regard to two other matters.

### I.

The suggestions in support of the defendants' post-trial motions accurately state that "all the grounds relied upon in the instant motion were raised during the trial of this case and fully discussed with the Court in all respects." Defendants' suggestions do not direct the Court's attention to any authorities not heretofore considered during the trial of the case. Defendants expressly recognize that the citation of the same cases to which the Court's attention had already been directed would merely "duplicate the arguments already of record."

We have reviewed our notes and have reconsidered the questions presented in defendants' pending motion. We find and conclude for the reasons which, for the most part, have already been stated of record that the sixteen grounds stated in defendants' pending motion are without merit.

Accordingly, such motion and defendants' joint alternative motion for new trial will be denied.

On December 21, 1972 counsel for defendant James S. Duardi filed a motion for acquittal, to set aside the verdict, and, in the alternative, for new trial. That motion was not filed within the time provided in Rule 33 of the Rules of Criminal Procedure. The ground stated, however, was ruled at trial. We indicate of record that had defendant Duardi's motion been timely filed, it would have been denied on the merits for reasons stated in connection with the Court's action in granting defendants' motion for bill of particulars.

## II.

Counsel will recall that shortly after the jury resumed its deliberation the morning after the case had been submitted to it, it requested all of the exhibits. Counsel for all defendants agreed that all exhibits admitted in evidence should be sent to the jury. Counsel also agreed that the numerous exhibits attached to Court Exhibit 1, which was a pretrial stipulation relating to the authenticity of exhibits which might be adduced in evidence, should not be sent to the jury. Procedures were directed by the Court at that time which were designed to avoid the complications of any inadvertent transmittal of any exhibit which had been offered but not admitted in evidence. It is the Court's recollection that specific reference was made to difficulties encountered in the case of Osborne v. United States, (8th Cir., 1965) 351 F.2d 111.

We deem it our duty to advise the parties that in spite of the precautions taken, the deputy clerk who served during the trial of the case, advised the Court that when he collected the exhibits after the trial he found that Government Exhibit R, the telephone toll record exhibit, had been found with the exhibits that went to the jury room. Apparently that exhibit had inadvertently been sent to the jury room with the other exhibits. That fact was not communicated to the Court until after all counsel had left the courthouse.

Under the circumstances, we deem it appropriate that the Court indicate its tentative view of the question presented, exercising power under Rule 52 of the Rules of Criminal Procedure, and that counsel be afforded an opportunity to make any further record which they may deem appropriate.

There is little doubt that it was error for the jury to have seen Government Exhibit R. Counsel will recall that during our discussion of defendants' objections to that exhibit the Court stated that defendants' objections were valid only in a limited sense and that the difficulty with the exhibit in the form it was offered was that many phone calls which had no probative value (in that they simply reflected calls between pay telephones in public places) were listed together with records of telephone calls between identified individuals which could be relevant.

Indeed, the record of the call from Mrs. Pitts' telephone number to that of defendant Bishop on January 19, 1972, about which Mrs. Pitts was cross-examined without objection is an example of the relevancy and materiality of a particular call between telephone numbers of identified individuals. At any rate, counsel for the government were advised at our discussion out of the presence of the jury that the Court would admit Exhibit R in a form which would eliminate the calls between the public pay phones which did not identify the individual making the call, but that it would sustain defendants' objection to Exhibit R in the form that Exhibit R was originally offered.

The government, however, failed to alter the form of Exhibit R and simply offered the exhibit in its original form. We, of course, adhered to our indicated ruling and sustained defendants' objection to the government's offer. It is obvious that Exhibit R should not have been sent to the jury and that error occurred when it was sent.

It is my tentative view that Rule 52 (a) requires this Court to determine whether that error, inadvertent as it may have been, did or did not affect the substantial rights of the defendants. Rule 52(a) requires that such error shall be disregarded if it is determined that the substantial rights of the defendants were not affected. Rule 52(b), of course, requires that such error must be noticed if it is concluded that the substantial rights of the defendants were affected.

Judge Van Oosterhout's opinion in Osborne v. United States, *supra*, collects the cases where the question presented

has been discussed. The exhibit in *Osborne* which erroneously went to the jury was found to have contained "highly damaging and prejudicial matter which could well have an affect upon the jury verdict." Such a finding required that the defendant in that case be granted a new trial.

But neither *Osborne* nor any other case with which we are familiar, suggests that a *per se* rule is applicable to all cases in which the jury sees an exhibit which was not admitted in evidence. The error implicit in the circumstance of the two exhibits not admitted in evidence which went to the jury in Finnegan v. United States, (8th Cir., 1953) 204 F.2d 105, for example, was found to be not prejudicial under the circumstances of that case.

It is our tentative view that the question of whether any substantial rights of the defendants were affected must be determined on a case by case basis and that, as stated in Kotteakos v. United States, 328 U.S. 750, 762, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557 (1946), "[i]n the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of *stare decisis* by what has been done in similar situations." *Kotteakos* teaches that where the judge "is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress."

On the other hand, *Kotteakos* also teaches that:

. . . . If one cannot say, with fair assurance, after pondering all that happened, without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were

not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

The Eighth Circuit cases and other Supreme Court cases which apply the rule were recently collected in United States v. Porter, (8th Cir., 1971) 441 F.2d 1204 at 1215.

I believe it appropriate to state that it is my tentative view that I do not deem it in the interest of justice to rule this type of question upon any theory that counsel were afforded a full and fair opportunity to check the exhibits for themselves. Judge Gardner gave some weight to that consideration in holding the error involved in *Finnegan* to be not prejudicial. And Judge Weick in United States v. Yoppolo, (6th Cir., 1970) 435 F.2d 625 at 627, flatly stated that the duty rested upon counsel for both parties "to make sure that no exhibit which has not been admitted in evidence will be sent into the jury room [and that counsel] ought not to leave this task solely to the clerk." It seems to me, unless counsel are able to locate authority which we have not found, that determination of the question of whether the substantial rights of a defendant were affected can not be avoided by a simple determination that their counsel may have failed to have discharged a responsibility which rested upon them.

It is my tentative judgment that I am required to reach on the merits the question of whether there was, in fact and in law, a possibility that the harm, if any, occasioned by the error can be fairly said to have had anything except a very slight effect upon the verdict. I tentatively am of the judgment that I must eventually decide, on the merits, whether it must be said to be doubtful, under the entire circumstances of the

case, that the verdict of the jury could not have been substantially swayed by the error.

I do not believe that those questions should be determined without affording counsel for the defendants an appropriate opportunity to present and brief what they deem to be the questions presented and to make argument in any manner which they deem appropriate. Our order will therefore direct further proceedings in this regard.

### III.

All parties are familiar with the fact that prior to the trial of this case, the government, pursuant to § 3575, Title 18, United States Code, filed an *in camera* notice with another judge of this Court which stated in substance that the attorney charged with the prosecution of this case had reason to believe that each defendant was a "dangerous special offender" and therefore subject to the sentencing procedure provided in §§ 3575–3578, Title 18, United States Code.

The complicated procedure established by those sections makes clear that even though one may be found to be a "special offender" within the meaning of § 3575(e), he may not properly be sentenced under that section unless he also be found to be "dangerous" within the meaning of § 3575(f). Subsection (f) expressly provides that a defendant may be considered to be "dangerous" for purposes of sentencing only if it is determined that "a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."

The legislative history of § 3575 makes clear that both a finding that a particular defendant is a "special offender" within the meaning of subsection (e) and also is "dangerous" within the meaning of subsection (f) must be made before the procedures outlined in that section may be utilized. See Assistant Attorney General Will Wilson's letter of September 9, 1970, to the Chairman of the House Judiciary Committee in which he stated that "[i]f a court finds that the usual maximum term for the felony, or any lesser term, is all that should be imposed, by definition the court could not find the defendant to be a dangerous special offender." (1970 U.S.Code Cong. & Admin.News, p. 4066). The Department of Justice made clear that § 3575 was "designed to deal primarily with the organized crime offender," and that "an offender must not only come within these criteria [defining special offender], but must be found by the court to be 'dangerous' in the sense that confinement longer than that ordinarily provided for the crime of which he has been convicted is required to protect the public from further criminal conduct by him" (Ibid, p. 4067).

Each of the defendants are presently subject to a fine of not more than $10,000, or imprisonment for not more than five years, or both. Determination of the question of whether a longer period of confinement is required for the protection of the public would seem to require the production of some sort of relevant empirical data to support a finding that maximum sentences imposed for violations of § 371 of conspiracy to violate § 1952 of Title 18, United States Code, have been generally ineffective to deter the particular defendants so sentenced from further criminal conduct. At the very least, the rate of recidivism by persons sentenced under § 371 for conspiracy to violate § 1952 (or perhaps conspiracy to violate other substantive statutes of the United States) may be relevant data upon which the required finding under § 3575(f) might be based.

Counsel for all parties have indicated to the Court that appropriate procedures should be designed to afford all parties the opportunity of stating their views as to the procedural steps which should be taken in regard to the § 3575 notice. We agree. And our order shall direct further proceedings in both general and specific detail.

## IV.

Accordingly, and for the reasons stated, it is

ORDERED that defendants' timely filed joint motion for acquittal, to set aside the verdict, and, in the alternative, for a new trial, should be and the same is hereby denied. It is further

ORDERED that in order to afford the defendants a reasonable opportunity to state their position, each defendant shall within twenty (20) days of this order prepare, serve, and file what they deem is appropriate in regard to Exhibit R which inadvertently was sent to the jury under the circumstances described in Part II of our Memorandum Opinion. It is further

ORDERED that within twenty (20) days the government shall prepare, serve, and file an appropriate statement in which it shall advise the Court in regard to all cases in which sentences have been imposed pursuant to Section 3575 et seq., and to attach transcripts of the proceedings in such cases, if any, so that this Court may have the benefit of the experience established in such cases. It is further

ORDERED that within twenty (20) days, the government shall prepare, serve, and file a statement of the evidence it intends to adduce in order to support a finding of dangerousness, as required by § 3575(f) of Title 18, United States Code. It is further

ORDERED that within twenty (20), days, both the government and the defendants shall file an appropriate statement in which each shall state their position in regard to what additional procedures should be followed in connection with § 3575 and their view of whether or not such section may be properly applied under the circumstances of this case. It is further

ORDERED that each party shall have ten (10) days within which to file an appropriate response to any filing required of the opposing party under the directions of the above orders.